May it please the court, my name is Laura Crank. I'm here on behalf of the appellant Joann Ruiz. This is a social security disability case. Ms. Ruiz is disabled due to post-traumatic stress disorder and major depressive disorder due to years of childhood abuse. There's three issues that were briefed. At this time we'd like to withdraw the second issue regarding the ALJ's use of the grids due to some recent 9th Circuit case law and the strength of the other issues. Therefore, the issues before the court are whether the ALJ provided specific and legitimate reasons to reject the examining doctor, Dr. Schultz, for the non-examining doctor that reviewed the case and whether clear and convincing reasons were provided to reject the subjective complaints. And within that argument is also whether the ALJ provided any germane reasons to reject the testimony. In order to reject the opinion of an examining doctor, you have to provide specific and legitimate reasons. This area of law is well established. Treating physician versus examining physician versus non-examining physician. Non-examining physician, in order to give that doctor credit, it's an exception. When reviewing this case, the commissioner decided that there was insufficient evidence to make a determination, so they sent her out for a consultative examination. The psychiatrist that examined her found that conducted, took a long history, performed a mental status examination, and assessed limitations and came to a conclusion. She found that she had average intelligence and was therefore capable of simple work. However, she could not, because of her post-traumatic stress disorder and the major depressive disorder and the subsequent symptoms of panic attacks, paranoia, auditory hallucinations, and other symptoms, that she could not interact appropriately with coworkers, supervisors, and peers. She couldn't withstand the pressures of usual work day, and that she could not manage funds on her own behalf, and that she was disabled. The judge rejected this for the opinion of the examining doctor that reviewed the file. In order, the cases where this is allowed... I don't want to stop you from making your main point, but didn't the court find that she had all these problems? The question was whether there were some jobs that she could do. The court, they said yes, they are, and that's why they said she wasn't disabled. It wasn't that she wasn't injured. No, the judge rejected the opinion of Dr. Schultz. May have, but didn't they... I thought the court found, and I may have a note here, that she has impaired hearing, she has depression, are you saying that she has hepatitis, and she has something's wrong with her left arm? Didn't the court accept all those findings? Yes, well, the question then is, what limitations does she have from this? I mean, there's people walking around with diabetes, and lupus, but there's still... Whether there's a job she can do, or whether there isn't, and I gather your point is, there is no job that she can do with those impairments. I think the court found that there were impairments. Well, we don't know if, well, the judge, no, the judge rejected the limitations Dr. Schultz said of the inability or difficulty interacting with co-workers, supervisors, and peers, and the inability to adjust to the usual stresses of a work environment. So, then she'd be disabled. So, that's the issue. And so, he rejected that. He said, well, she, instead, he isolated her findings and said she could do simple work, and then credited the opinion of the non-examining doctor, who said she could do simple work, and found her not disabled. Well, nobody's saying that she's not capable of simple work. She's not retarded. She has average intelligence. The question is what can't she do? And the doctor said the only doctor that examined her, the only doctor that's provided objective clinical findings, and the record said she has these other limitations that would prevent her from working in a competitive work environment or sustaining employment. The reason the judge... And so, in order for the judge to credit a non-examining doctor, there has to be... It's an exceptional case, and the case is actually cited by the commissioner in their reply, which Andrews is one of the cases, and I'm not sure if the court has read that case yet, but it is an exceptional case. In that case, we had a claimant that there were five other examining doctors that the judge had to go by. In that case, the medical expert actually testified at the hearing and was subject to cross-examination. In that case, the claimant admitted that he could manipulate judges to get what he wanted and could lie to get what he wanted in court. In that case, the client admitted he had no interest in pursuing treatment. Andrews also relies on Magellanus, which is similar. There were also four other examining doctors, and the objective evidence conflicted with the opinion of the MRIs, and just clear objective evidence. And so, it's just truly an exception. You'd have to have overwhelming other evidence, independent clinical findings. Now, the commissioner concedes in their brief that the examining physician that didn't testify at the hearing, that just reviewed the case, does not amount to substantial evidence, standing alone. There has to be something more. Well, something more is defined in the case law. Something more is defined as, it's defined in Oren B. Astru, also Smolin and Lester, but primarily Oren is a very detailed, thorough case. It says there have to be independent clinical findings. So, if we look at Dr. Vey's very brief assessment, there's no, he doesn't cite to any independent clinical findings. He just cites to the opinions of the examining doctor, which say that she can do simple work. Well, we know she can do simple work. The question is, can she continue to do that job? Another reason the judge, so that's why he credited the examining doctor. He rejects Dr. Schall's opinion because he says she wasn't aware that she had worked in the past. We're arguing that's not a legitimate reason. First of all, the which the judge doesn't argue with shows that she was fired from all of her past work because she could not get along with her supervisors, co-workers, and peers. Even the previous job that she had had, she had to perform in isolation in the back. She was, they called her a cook, but she can't cook because she can't smell or taste. She has other problems, but I guess she was, she says they left me in the back. They left me alone. I didn't talk to anyone, but she still got fired from that job arguing with her boss. She seemed to exaggerate the difficulty getting along with people. She has family and friends. Yes, I don't think that the court wishes to make, say that you cannot be mentally disabled because you have family. I don't know about friends. It shows that there's a neighbor that had drove her to the hearing, but she has family that checks on her. The judge calls it socializing. She doesn't really socialize with them. She didn't go with them to Thanksgiving. She says she stood alone on Thanksgiving. She did go at Christmas, but the testimony and the record shows that even when she's there at Christmas, she sits in a corner, stares at a wall. She talks to herself. If having family means you can't be mentally disabled, just go to the mental institutions and stand outside and wait for people to come visit and say, okay, well, you got to go home now because you have family. Your family's supposed to take care of you when you're sick. This woman is unsophisticated, poorly educated, and we know the traumatizing childhood abuse that she went through and that her other family members went through as well, so they're limited. They appear limited in how much they can help her. She's seriously mentally ill. The record shows that, and so these limitations that are assessed by Dr. Schall, I mean, she can sort lollipops. She can do something simple, but can she work standing next to somebody? She thinks she hears people talking to her. She hears people criticizing her. She has panic attacks. She feels like she's going to go off, and so that's the standard. That we go to, unless you have some extreme circumstances like Andrews or Magdalenas, or there's just so much other evidence. Also in Andrews, the doctor performed no testing. The only independent clinical findings we have in this case are from Dr. Schall, and there's nothing that shows that the conclusions were inconsistent with her findings. There were objective findings on the examination. She couldn't do serial sevens. She was crying throughout the There's no other clinical findings in the record. In regards to the subjective testimony, he rejects it for these things that were already brought up, because she has family that comes and checks on her, that takes her to doctor's appointments. Very minimal, rare interactions. The case law is well established on this point as well, that even much more daily activities, such as taking your kids to soccer, going grocery shopping, going to church, going to the movies, that these daily activities are not inconsistent with disability. There's nothing like this in this case. Actually, the lay witness testimony, which was ignored, or no reasons were given to reject it, support this. They say she sits in a room and she stares at the wall. She cries all time. She smells. She doesn't take showers or clean unless she's told to. You never know what to say to her. You have to be very careful when you talk to her or she'll go off. The judge didn't provide any reason for rejecting these. If the court has any more questions, I would like to take them, because I believe that this area of law is well developed, and I'm ready to answer any other questions that you might have. No, I think with the records here and we've reviewed it, so I don't have any questions. All right, then I would just like to, I have more than three minutes left, but I would like to just reserve that for my rebuttal, please. Good morning, Your Honors. My name is Jacob Meeko. I'm an attorney for the appellee, Michael J. Astrew, Commissioner of Social Security. This case, as Ms. Crank stated, is about three issues, whether the ALJ properly assessed the opinion of mental limitations assessed by Dr. Ina Schultz, an examining psychiatrist, whether the ALJ properly assessed the credibility of the plaintiff and the associated third-party evidence by Christina Cagnes, and whether the ALJ properly assessed that the plaintiff was not disabled based on the medical vocational guidelines, also known as the guidelines. As the district court found, and as we've argued in our brief, the ALJ made proper determinations on all three of these decisions based on substantial evidence in the record with no legal error, and today we ask that you affirm that decision. Breaking down the three issues in this case, the examining doctor, the credibility, and then the grids. Regarding Dr. Ina Schultz, to be respectful to Ms. Crank, I don't think she has the standard correct. It doesn't have to be an exceptional case. It doesn't have to be an outstanding case. Lester, Andrews, these cases state that the ALJ can reject an examining physician for a non-examining physician if there's other evidence to support that. And in the ALJ's opinion, he gave six reasons, only one of which did plaintiff even attempt to address. The other five they didn't. Six reasons why Dr. Vea's opinion was credited over it, and the evidence in the record, yes, objective evidence that was in the record that meets that standard. And this was also what the district court affirmed. It was a proper determination. Also, regarding Dr. Schultz, the ALJ did not reject the whole opinion. The ALJ only rejected those parts of the opinion that were not supported by the evidence. Also, the plaintiff states that the five reasons given were not valid, but the district court found they were, and they were based on case law. Regarding the work date, the actual evidence for the work date and for that she could work at a job and hold down a job, that evidence was she worked after her alleged onset date, which is information that Dr. Schultz didn't have. In fact, Dr. Schultz did not have any records from plaintiff. Dr. Schultz relied solely on the subjective statements made by the plaintiff in this case. Regarding credibility, the ALJ again, and supported by the district court stating that all of these were valid, gave nine reasons why her credibility was discounted. Nine reasons that were supported by the record. He also went on to properly assess Ms. Kanya's, who's a third party, lay witness testimony, her testimony, and gave a reasonable interpretation of that evidence. This evidence was not ignored, as Ms. Crank stated. It's in the ALJ's opinion. He discussed it and interpreted it. Regarding the last, regarding her ability, excuse me, regarding the statements that she couldn't do anything and that she was totally sat indoors and was afraid to do anything, couldn't interact, there's lots of evidence that she could hold down a job. She said she was, at her very last job, she stated that she was very good at her job, and her boss even said she was good at her job. When she said she didn't have interactions with people, she had interactions with her family, with friends. She said repeatedly they take her shopping, they do activities with her, and she has a boyfriend with whom she lives. These are activities that refute what Ms. Crank says. Regarding the third issue, whether the properly in this case, something that Ms. Crank didn't state today, the ALJ with the residual functional capacity found that Rule 202.17 applied to this case, that she had the residual functional capacity and based on the grids was able to perform work. Therefore, she was not disabled. As the District Court found, and as we've shown in our brief, the decisions made by ALJ were proper, based on the record, with substantial evidence, and free of legal error. So we ask that you affirm that decision today. If there are no other questions from the Court. I have no questions. Thank you. Thank you. Thank you, Your Honor. No, Mrs. Ruiz did not work after the alleged onset date. The judge did not find that. What happened was, is that there was, the judge rejected Dr. Schultz, the examining doctor's opinion, saying that she did not know that she had worked before. And that's not true, because Dr. Schultz discusses her past work in her history, and discusses her previous job of working for three years as this prep cook. So the reason the judge stated is inaccurate. It's not true. So therefore, it can't be legitimate. What about the other reasons the judge gave? He says that because she worked in the past, that she's not disabled now, that she could do simple work. Nobody's saying she can't do simple work. Dr. Schultz said she could do simple work. That's what I'm saying. She's not mentally retarded. She can do simple, repetitive tasks. It's whether she can sustain work, whether she can do it on a regular, continuing basis. The only independent clinical findings in the record show that she can't. That's the standard. In regards to the subjective testimony, the judge, it wasn't, I don't think it was brought up before, but there was some, the judge did cite some issues regarding failure to. What your opponent says is the court can reject statements made by even the treating physician if there's evidence in the record to refute it. It has to be specific and legitimate, and legitimate is described in the case law as independent clinical findings. He didn't, there's, he didn't cite to any independent clinical findings. In fact, I found his argument, his entire argument to be very vague, which was similar to the ALJ's decision. A review of the transcript in this case, evidence is that she was never able to maintain employment. She was fired from all of her jobs. The review of the transcript evidence is that she was on medication for a short while. Does she have social interaction with other people, with any other people? Besides her family? No. So she's not living with a boyfriend. That's just a lie. I would consider that family. Well, he isn't family. The person to whom you're not married and living with, you consider family? She doesn't interact. You see, that's the problem. Maybe we are not communicating because she has a boyfriend. Does she have, is she able to sustain social relationships with anybody? And you, you're saying yes, she is able to sustain social relationship with her family, I think you're saying. That's mostly based on the efforts of her family and her, because her family says how difficult it is to maintain. It's, they are the ones that are faced with the challenge of interacting with a mentally ill person. But is she living with her boyfriend? She is living, she was living with a boyfriend at the time of the hearing. However, she testified that. How long had she lived with a boyfriend? Two years, I believe. All right. And was. But they're not having sex anymore, so I don't know what that means, that's a friend. We're not talking, I hope we don't, I'm concerned about the extent of the relationship. Well, she needs a place to live. She's been homeless, she lives everywhere. So she found someone that, just because someone loves you does not mean that you can't be disabled. Does it mean that you can or cannot maintain a social relationship? I would guess it means that you can maintain a social relationship, but there is no case law that says just because you can maintain a social relationship with your family, that that is going to transfer to the workplace. That those are going to be skills that are transferable to the workplace, where you can sustain work on a regular, continuing basis. And that argument that you have holds true only if the boyfriend is considered his family. No, no, you can have family and friends and be mentally ill. You can have people that love you and they put up with your crazy, mentally ill behavior. Your family is supposed to take care of you. They, you know, she's hard to deal with. They really don't want her hanging around, but she's crying all the time. She's talking to herself, she's alone, and they try to come over and check on her. Good for them. You said earlier that she smells bad. Yes, the sister says that she has to be reminded they tell her to bathe when she smells bad. I think that's nice of her. She helps her sister out as much as she can. I think the records, don't you think the records pretty clear on this case? Is there anything that you think we're missing? Yeah, well, just I want to make sure that there's no other, in order to reject the opinion of the constatative examiner, there have to be independent clinical findings. And there are none. The non-examining doctor who was not, in the other cases where Andrews, Magdalenas, there was five other doctors that were in the record, there were multiple treatment records, and the doctor was there for cross-examination at the hearing. They're distinguishable. Your opponent isn't coming back to argue again, because his time's up and you're in rebuttal. But I think he would say that everything you said is true, unless there's evidence, in other words, you must accept the statement of the treating physician, unless there's evidence of the record to show that that conclusion is inaccurate. Well, it's not just any evidence. It has to be clinical evidence. Now, if the judge wants to has not been found to amount to clear and convincing reasons to reject subjective complaints, she has to spend a substantial part of her day performing activities that are consistent with work. She doesn't do that. She sits in her house all day. She's isolated. So I don't think that the case law does say that. You think it turns on what she does rather than what she's capable of doing? I think what she's doing is about as much as she's capable of doing. But what would be the test, the legal test? Do I think she could do simple work? Would it be what she's doing or what she's capable of doing? Well, your RFC assessment is the most you're capable of doing, and that was assessed by the examining psychologist, the only one that's in the record, the only clinical findings in the RFC assessment. And the non-examining doctor, he reviews hers, and he says he isolates the findings in her exam that say she can do certain things. I mean, Rain Man is great at math, but that doesn't mean that he can go out there and work. We're past your time, and I think you've made your point. I think we're clear on your position. Thank you, Your Honor. Thank you. The case just dogged is submitted. The court for this session stands adjourned.
judges: Farris, Noonan, Bybee